UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
:
DONG CAI,                                      : 13-CV-3617 (ARR)
                                               :
                    Petitioner,                : Related to:
                                               : 10-CR-0590 (S-1) (ARR)
         -against-                             :
                                               : NOT FOR ELECTRONIC
UNITED STATES OF AMERICA,                      : OR PRINT PUBLICATION
                                               :
                    Respondent.                : ORDER AND
                                               : MEMORANDUM
------------------------------------------------------------- X

ROSS, United States District Judge:

Petitioner, Dong Cai ("petitioner" or "Cai"), moves pro se to vacate his conviction pursuant to 28 U.S.C. § 2255. Construing the petition liberally, Cai argues that (1) his plea agreement, including the collateral attack waiver therein, is void because his trial counsel "forced" him to plead guilty, (2) his trial counsel was ineffective because she failed to inform him of the potential immigration consequences of his guilty plea, (3) he is actually innocent, (4) the sentence imposed by this court was excessive, and (5) he was selectively prosecuted because the investigating Supplemental Security Income ("SSI") agent had a "race problem." For the reasons stated below, the petition is denied.

## BACKGROUND

A. **The Charges against Petitioner**

In a superseding indictment filed on December 22, 2011, the government charged petitioner with two counts of benefit payment fraud in connection with (1) his theft of $71,095 in SSI benefits issued to Nancy Collins, the petitioner's deceased ex-wife, and (2) his theft of

1

$1,464 in food stamp benefits also issued to Nancy Collins. See United States v. Cai, No. 10-CR-0590(ARR), Dkt. #47; Mem. of Law in Opp'n to Pet. 5 ("Opp'n"). According to the Presentence Investigation Report, Nancy Collins, an SSI and food stamp recipient from whom petitioner was divorced in 1996, died in February 2001. Opp'n 4; Gov't Ex. A ¶ 3. A 2009 investigation of the Social Security Administration (SSA) revealed that SSA had not been notified of Collins's death and had continued to issue benefit check payments to Collins between February 2001 and November 2009. Gov't Ex. A ¶ 3. Further investigation revealed that $71,095 in total had been paid through direct deposit in Collins's name since her death. Id. ¶ 4. During an interview with investigating agents on April 28, 2010, petitioner admitted that, after Collins's death, he continued withdrawing her SSI benefits via ATM withdrawals from her bank account and had forged her signature on personal checks associated with the deceased's bank account. Id. ¶ 6.

**B.** **Petitioner's Guilty Plea**

On May 3, 2012, petitioner pleaded guilty to count one of the indictment. See Tr. of Criminal Cause for Pleading, Gov't Ex. C, 9, 19 ("Plea Tr."). Petitioner's guilty plea was pursuant to a plea agreement with the government signed by both petitioner and his trial counsel, Michelle Gelernt, Esq. ("Gelernt"), of the Federal Defenders of New York, Inc. ("Federal Defenders"). See Plea Agreement, Gov't Ex. B ("Plea Agmt."). Petitioner's counsel provided him with a written Mandarin translation of the entire plea agreement. Opp'n 5.

According to an affidavit provided by defendant's trial counsel, the government had first offered petitioner an opportunity to plead guilty to a misdemeanor, but the government withdrew that offer after it was rejected by petitioner. Decl. of Michelle Gelernt ¶ 7 ("Gelernt Decl.").

When Gelernt discussed the government's final proposed plea agreement with Cai, petitioner expressed regret at having rejected the prior offer. Id. After thoroughly discussing the plea agreement with Gelernt, petitioner informed her that he wished to plead guilty. Id.

Under the plea agreement, the petitioner explicitly waived his right to challenge his conviction or sentence by way of appeal or collateral attack, including by way of a petition pursuant to 28 U.S.C. § 2255, if he was sentenced to a term of imprisonment of 21 months or less. Plea Agmt. ¶ 4.[1]

## C. Sentencing

On August 14, 2012, this court sentenced petitioner to a term of imprisonment of 364 days and three years of supervised release.[2] Gov't Ex. F. Prior to sentencing, the government and defense agreed that petitioner was at a guidelines level 13, criminal history category 1, and thus under the advisory guidelines his sentence would fall within the range of twelve to eighteen months. Tr. of Sentencing, Gov't Ex. E ("Sent. Tr."), 3. This court rejected the defense's request for a downward departure from the guidelines to a sentence of time served, or approximately ten months. Id. at 5. Instead, the court granted defense counsel's request for a sentence of 364 days instead of a full year, which, defense counsel argued, could "have a significant effect in terms of [petitioner's] ability to litigate his immigration issues." Id. at 5, 7.

## D. Petitioner's Appeal of his Conviction and Sentence

---

[1] The agreement states:
    The defendant agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 21 months or below. This waiver is binding without regard to the sentencing analysis used by the Court.
Plea Agmt. ¶ 4.
[2] This court also imposed monetary penalties of $100 in assessments and $71,095.00 in restitution. Gov't Ex. F.

3

Following petitioner's sentencing, a notice of criminal appeal was filed on behalf of petitioner with the Second Circuit Court of Appeals on August 24, 2012. See United States v. Cai, Ct. of Appeals No. 12-3346, Dkt. #1. On September 28, 2012, the government moved to dismiss petitioner's appeal on the grounds that Cai had waived his appeal right in his plea agreement. Id., Dkt. #15.

An attorney with the Federal Defenders was appointed as petitioner's appellate counsel. Because Cai had alleged in a letter to the Federal Defenders that, inter alia, his trial lawyer forced him to plead guilty and did not "want to fight for [him]," the Federal Defenders asked to be removed from the case due to a conflict of interest. Decl. of David A. Lewis, Gov't Ex. H. On November 26, 2012, the Second Circuit granted that request and appointed Robert Boyle as petitioner's new appellate counsel. Cai, Ct. of Appeals No. 12-3346, Dkt. #26.

On April 4, 2013, Boyle filed a motion pursuant to Anders v. California, 386 U.S. 738 (1967), averring that there were "no non-frivolous issues which [could] be presented on appeal" and asking to be relieved as counsel. Decl. of Robert Boyle, Gov't Ex. I. In a pro se letter response to the Anders motion, petitioner argued that (1) he did not want to plead guilty but that "they forced [him] to plead guilty," (2) that he wanted a jury trial, (3) that he was "kidnaped" in jail, (4) that they wanted to "destroy" and "kill" him in jail, (5) that he did not steal money from the United States but instead that Nancy Collins "gave her money" to him, (6) that the FBI had a "race problem" and "don't like Chinese." Gov't Ex. J.

On June 17, 2013, the Second Circuit issued a summary order granting Boyle's Anders motion. Gov't Ex. K. Furthermore, the court's order granted the government's motion to

dismiss the appeal from petitioner's conviction and term of imprisonment and summarily affirmed his term of supervised release and monetary penalties. Id.

E.  **The Instant Action**

On June 20, 2013[3], Cai filed the instant petition pursuant to 28 U.S.C. § 2255. Prior to filing the instant action, petitioner finished serving his 364-day sentence on or about October 25, 2012. See Inmate Locator, Fed. Bureau of Prisons, http://www.bop.gov/iloc2/LocateInmate.jsp (under "Search By Name," search "First Name" for "Dong" and "Last Name" for "Cai). Currently, petitioner is detained by Immigration and Customs Enforcement ("ICE") at a correctional facility in New Jersey pending the outcome of removal proceedings to which petitioner was apparently subject even prior to his conviction.[4] Opp'n 12; Notice to appear for removal proceedings, Gov't Ex. G (served Sept. 21, 2007). However, petitioner remains "in custody" for purposes of the jurisdictional requirement of § 2255 because he is still under supervised release. See Scanio v. United States, 37 F.3d 858, 860 (2d Cir. 1994) (holding that § 2255 petitioner remains "in custody" during supervised release); Douglas v. United States, No. 08-CV-4728 (FB), 2009 WL 1322328, at *1 (E.D.N.Y. May 13, 2009) (holding that § 2255 petitioner remained "in custody" under supervised release during ICE detention); Abimbola v. United States, 369 F. Supp. 2d 249, 253 (E.D.N.Y. 2005) (finding that supervised release continues to run during petitioner's immigration detention).

---

[3] The petition is dated as placed in the prison mailing system on June 14, 2013. Because timeliness is not at issue here, the court need not determine the exact filing date of the petition.
[4] Although the government's brief states that petitioner is currently detained at the Monmouth County Correctional Institution in Freehold, New Jersey, his address listed on the docket for this proceeding is at the Hudson County Correction Center in Kearney, New Jersey. Regardless, it is clear that petitioner was held in immigration detention in New Jersey at the time he filed the instant petition.

5

Construing the petition and other letters that petitioner has since filed with the court liberally, petitioner challenges his conviction and sentence on the grounds that (1) his guilty plea was not knowing and voluntary but rather his trial counsel "forced" him to plead guilty, (2) his trial counsel was ineffective because she did not want to fight his case and did not inform him of the potential immigration consequences of a guilty plea, (3) he is actually innocent of the crime to which he pleaded guilty, (4) the sentence imposed by this court was excessive, and (5) he was selectively prosecuted because of his race. Having reviewed the government's response in opposition to the petition, the court will now address each of petitioner's claims.

## DISCUSSION

### A. To the extent they were rejected by the Second Circuit on direct appeal, petitioner's habeas claims are barred.

The government would have this court dismiss Cai's petition on the grounds that all of the claims raised in his petition "were summarily rejected by the Second Circuit on appeal." Opp'n 14. "It is well settled that 'section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal.'" Barnett v. United States, 870 F. Supp. 1197, 1201 (S.D.N.Y. 1994) (quoting Cabrera v. United States, 972 F.2d 23, 25 (2d Cir. 1992)); see also Yick Man Mui v. United States, 614 F.3d 50, 53-54 (2d Cir. 2010) (stating rule applies to relitigation of issues impliedly as well as expressly decided on direct appeal). The government argues that this so-called "mandate rule" should bar Cai's petition because "most of the claims he now raises" were set forth in his pro se response to appellate counsel's Anders motion before the Second Circuit. Opp'n 14. In its summary order, the Second Circuit granted appellate counsel's Anders motion as well as the government's motion to dismiss on the grounds

of the enforceability of petitioner's appeal waiver in his plea agreement. See Gov't Ex. K. Insofar as the Second Circuit considered the claims raised in Cai's § 2255 petition on appeal, Cai may not relitigate those claims here. However, it is not clear from the Second Circuit's summary order to what extent the appellate court considered and rejected the claims in petitioner's <u>Anders</u> response letter. Furthermore, although Cai's <u>Anders</u> response alleges that his trial counsel forced him to plead guilty, that he is innocent, and that an investigating agent had a "race problem," it does not appear to raise Cai's claim, presented here, that trial counsel was ineffective in failing to inform petitioner of the possible immigration consequences of his guilty plea. See Gov't Ex. J. For these reasons, the court considers but rejects petitioner's claims on the merits.[5]

### B. Petitioner was not denied effective assistance of counsel, and his guilty plea was knowing and voluntary.

In his filings, petitioner appears to argue that he did not make his guilty plea knowingly and voluntarily but, rather, that his trial counsel "forced" him to plead guilty. Pet. 5, ECF 4. He argues that he was denied effective assistance of counsel because Gelernt "didn't want to fight for [his] case," id., and failed to inform him of the potential immigration consequences of his plea or to "seek a disposition with less harsh immigration consequences," Mot. to Dismiss/Vacate Criminal Case & Request for Lawyer (filed Sept. 4, 2013), Dkt. #11 ("Sept. 4 Mot."), ¶ 1. Petitioner insists that he would have opted for a jury trial but for his counsel's ineffective assistance. Id. ¶¶ 1-2. Petitioner provides little, if any, support for these assertions and, in fact, has contradicted many of them in his prior sworn testimony. Accordingly,

---

[5] The court notes that, absent a showing of cause and prejudice, a petitioner's failure to raise one of his claims on direct appeal prevents him from having that claim considered on collateral review. See, e.g., Yick Man Mui, 614 F.3d at 54 (citing Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993)). However, where, as here, a petitioner seeks to raise an ineffective assistance of counsel claim for the first time in the § 2255 context, the petitioner may bring his claim regardless of whether it could have been raised on direct appeal. Id. (citing Massaro v. United States, 538 U.S. 500, 509 (2003)).

petitioner's ineffective assistance of counsel claim and attempt to attack the validity of his plea agreement on that basis is denied.

To be constitutionally valid, a plea must be "both knowing and voluntary." Parke v. Raley, 506 U.S. 20, 28-29 (1992). "[A]n ineffective counsel may render a guilty plea invalid." Wang v. United States, No. 10 Civ. 4425(BMC), 2011 WL 73327, at *4 (E.D.N.Y. Jan. 10, 2011); see also Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). "To evaluate a claim that a guilty plea was involuntary and unknowing due to ineffective assistance of counsel, [courts] use the familiar framework established in Strickland v. Washington." United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) (internal citation omitted). Under the two-prong test established in Strickland v. Washington, 466 U.S. 668 (1984), a petitioner must demonstrate, first, that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. A court need not decide both prongs of the Strickland test if there is an insufficient showing on one. Id. at 697.

Petitioner provides no facts supporting his allegation that his counsel "forced" a guilty plea upon him except his conclusory assertion that Gelernt "didn't want to fight [his] case." In fact, petitioner's sworn testimony before this court belies his assertions. Petitioner testified at his plea hearing that he was "very satisfied" to have counsel represent him in the proceeding, Plea Tr. 9; that he understood that he did not have to plead guilty and could continue to trial, id. at 10-13; that he was making the guilty plea voluntarily and of his own free will, id. at 19; that no one had threatened, forced, or coerced him to plead guilty, id.; and that no one had made any promise to him, including as to what his sentence would be imposed, that caused him to plead guilty, id.

8

The court is entitled to rely on those sworn statements made by petitioner in open court. Hernandez, 242 F.3d at 112; see also Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea."); Wang, 2011 WL 73327, at *4-5 (relying on habeas petitioner's sworn statements at plea allocution to dismiss ineffective assistance of counsel claim based on allegations in petition that counsel did not inform petitioner of the consequences of pleading guilty).

In her affidavit submitted in connection with this proceeding, petitioner's counsel confirms petitioner's sworn testimony that she did not force him to plead guilty. Gelernt Decl. ¶ 7. During every discussion of a possible plea, Gelernt "made it clear that the decision to plead or go to trial was entirely [petitioner's]." Id. ¶ 3. According to his counsel, petitioner decided to accept the plea agreement after "thoroughly discussing the matter" with Gelernt and "express[ing] regret at having rejected the government's prior misdemeanor offer." Id. ¶ 7.

The only specific deficiencies petitioner identifies as a basis for his ineffective assistance of counsel challenge are that she failed to apprise him of the immigration consequences of his guilty plea and failed to seek a disposition with less harsh immigration consequences. He states:

> My then lawyer Michelle Gelernt never told me and said that I would be kept in Immigration Jail. Had I known this I would not have pled guilty with a sentence of 364 days in Immigration Jail. My lawyer Michelle told me that I could go home after I pled guilty, but she told a lie.

Sept. 4 Mot. ¶ 1. He claims that, had she told him of his possible removal, he would have opted for a jury trial. Id. ¶ 1-2. Although recent Supreme Court precedent held that the Sixth Amendment requires counsel to "inform her client whether his plea carries a risk of deportation," Padilla v. Kentucky, 559 U.S. 356, 374 (2010), petitioner's allegations of his counsel's failings here are unsupportable.

In her affidavit, counsel refutes petitioner's claim that she did not inform him of the immigration consequences of a guilty plea, and petitioner's own sworn testimony further undermines his allegations. Gelernt affirms that she discussed with petitioner "the possible penalties should he plead guilty or go to trial as well as the likely immigration consequences of either decision." Gelernt Decl. ¶ 3. Prior to petitioner's accepting the government's offer, counsel reviewed the terms of the plea agreement and "thoroughly discuss[ed] the matter." Id. ¶ 7. The terms of the plea agreement expressly stated a guilty plea might have adverse immigration consequences for the defendant and that "removal is presumptively mandatory" for the offense to which he was pleading guilty. Plea Agmt. ¶ 14. Petitioner "affirm[ed] that [he] want[ed] to plead guilty regardless of any immigration consequences that the [petitioner's] plea may entail, even if the consequence is the [petitioner's] automatic removal from the United States." Id. At his plea hearing, petitioner confirmed under oath that he could fully communicate with his lawyer, Plea Tr. 4, that he had read a Chinese translation of the plea agreement, id. at 13, that he had discussed the terms of the agreement with his lawyer and understood them, id. at 13-14, and, specifically, that he understood that he would be placed in removal proceedings as a result of the plea, id. at 15-16. The court made clear to petitioner at his plea hearing that he would be placed in removal proceedings if he pleaded guilty. Id. Prior to accepting his plea, the court also determined that petitioner understood this and was aware that,

if unsuccessful in his separate removal proceedings, he would be deported. Id. at 16. The record shows that, far from failing to seek less harsh immigration consequences, trial counsel in fact argued successfully for a sentence that would put him in a better position to litigate his immigration issues, which had themselves arisen prior to Cai's conviction before this court. Sent. Tr. 5-7.

Based on the foregoing, petitioner has failed to show that his trial counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms" or that his guilty plea was other than knowing and voluntary.

### C. Petitioner has waived his right to collaterally attack his conviction and sentence.

As described above, petitioner's plea agreement waived his right to challenge his conviction or sentence by petition pursuant to 28 U.S.C. § 2255. Plea Agmt. ¶ 4. A defendant's waiver of his appeal and collateral attack rights is "presumptively valid and enforceable." United States v. Peele, 500 F. App'x. 33, 35 (2d Cir. 2012); see also United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011); United States v. Arevalo, 628 F.3d 93, 98 (2d Cir. 2010). Such waivers will be upheld so long as they are "knowingly, voluntarily, and competently provided by the defendant." Riggi, 649 F.3d at 147 (internal quotation marks omitted). However, a waiver may be found void if a petitioner successfully attacks "the validity of the process by which the waiver has been procured, here, the plea agreement." Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002); see also Riggi, 649 F.3d at 147. Effective assistance of counsel is among those fundamental rights the violation of which may provide grounds for challenging the validity of a waiver in a plea agreement. Peele, 500 F. App'x at 35; Frederick,

11

308 F.3d at 195; Felix v. United States, No. 05 Civ. 3925(JFK), 01 CR. 984(JFK), 2005 WL 2088400, at *2 (S.D.N.Y. Aug. 29, 2005).

As already discussed in detail above, petitioner has not shown that his guilty plea was other than "knowingly, voluntarily, and competently provided" or that his counsel was ineffective in advising him on his options relating to the plea offer. What is more, at the plea hearing, the court reiterated for petitioner that, under his plea agreement, he would waive his right to appeal or otherwise challenge his conviction or sentence if a prison term of less than 21 months were imposed. Plea Tr. 18. Petitioner stated under oath that he understood that waiver. Id. Therefore, petitioner's plea agreement, including the collateral attack waiver therein, is valid and enforceable. On that basis alone, petitioner's other grounds for challenging his conviction and sentence must be dismissed. Nonetheless, the court considers these claims and finds each of them unsustainable on the merits.

### D. Petitioner's allegations do not support a claim of actual innocence.

In his petition, plaintiff states that he "did not steal money from [the] government" and that Nancy Collins "gave her money to [him]." Pet. 5, ECF 4. To the extent that these statements can be construed as raising an actual innocence claim, the court notes that the Supreme Court has yet to rule on whether a freestanding innocence claim can be a ground for habeas relief. House v. Bell, 547 U.S. 518, 554-55 (2006). Nonetheless, even were such a freestanding claim available, petitioner has not sufficiently satisfied the burden, which has been described as "extraordinarily high," for such a hypothetical claim. Id. at 555 (quoting Herrera v. Collins, 506 U.S. 390, 417 (1993)).

Petitioner has failed to meet even the standard that a habeas petitioner must meet when he seeks to invoke his actual innocence as an exception to a procedural bar to his petition. Petitioner has not demonstrated that, "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" Id. at 536-37 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). In fact, Cai has not presented any new evidence. Simply alleging that he is not guilty of stealing government money because Nancy Collins "gave" it to him in no way supports a claim of innocence because Collins was dead and had no legal right to be issued SSI benefits, much less give them away, during the time period in question.

What is more, petitioner's claims on this front once again contradict his prior sworn testimony. At the plea hearing, this court read the indictment to Cai, and he confirmed that he understood the charges against him. Plea Tr. 9-10. Cai admitted under oath that he continued using Collins's benefit payments after her death and that he understood that he was not legally entitled to such payments. Id. at 20-22. As noted above, those sworn statements are entitled to a "strong presumption of verity." Allison, 431 U.S. at 74. Accordingly, petitioner has not sustained a claim of actual innocence.

### E. Petitioner's challenge to the length of his sentence must fail.

In his petition, Cai puts forth "too much jail time" as a ground for habeas relief. Pet. 7, ECF 6. Petitioner sets forth no factual or legal basis for his challenge to the length of his imprisonment, except stating that he "was sentence[d] for 364 days" but "ha[s] been in jail about 600 days." Id. He provides no arguments or support for why his sentence to a 364-day term of

imprisonment was excessive in light of the charge to which he pleaded guilty, and, without more, this claim must fail even were it not already waived in the plea agreement.

In making this claim, petitioner appears to confuse the period of time that he has spent in federal jail for his conviction before this court and the period of time that he has spent in ICE detention pending his removal proceedings. Rather than challenging his 364-day term of incarceration imposed by this court, petitioner appears to challenge the additional time that he has spent in immigration detention since he completed his criminal sentence. Unfortunately, this court lacks jurisdiction to hear a challenge to Cai's present detention by ICE because he is physically confined outside the Eastern District of New York. See 28 U.S.C. § 2241; Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004); Freire v. Terry, 756 F. Supp. 2d 585, 586 (S.D.N.Y. 2010); Catellanos v. Mukasey, No. CV-08-2583, 2008 WL 4185700, at *3-*4 (E.D.N.Y. Sept. 8, 2008). Accordingly, to the extent petitioner seeks to challenge his present confinement by ICE, this court cannot entertain his claim.

### F. Petitioner has not stated a claim of selective prosecution.

In his petition, Cai alleges that the investigating SSI agent had a "race problem" and that she told another agent that she "want[ed] to send [Cai] back to China." Pet. 6, ECF 5; Sept. 4 Mot. ¶ 9. Like the government, the court construes this as an attempt to claim that petitioner was selectively prosecuted for benefit fraud on the basis of his race in violation of his constitutional rights. See Opp'n 19. At least one other case in this circuit has held that a habeas claim for selective prosecution must be dismissed on the basis of an otherwise enforceable collateral attack waiver such as the one entered into by petitioner. See Felix, 2005 WL 2088400, at *2.

Even assuming <u>arguendo</u> that petitioner has not waived his right to a collateral attack on this ground, petitioner has failed to state a claim of selective prosecution. Such a claim requires a showing that petitioner "was treated differently from other similarly situated individuals and that such differential treatment was based on impermissible considerations such as race." <u>United States v. Stewart</u>, 590 F.3d 93, 121 (2d Cir. 2009) (internal quotation marks omitted). Petitioner has alleged no facts giving rise to an inference that he was prosecuted for benefit fraud because of his race or that he was treated differently than other individuals. He simply states that the investigating agent had a "race problem" and wanted to send him back to China but alleges no facts indicating that this influenced the decision to prosecute him. Nor does he compare his treatment to that of anyone else. Accordingly, petitioner has failed to state a cognizable claim.

## CONCLUSION

As set forth above, petitioner's motion to vacate his conviction and sentence under 28 U.S.C. § 2255 is denied in its entirety. Furthermore, because petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 29 U.S.C. § 2253(c)(3), no Certificate of Appealability will issue. Petitioner may seek such a certificate from the Second Circuit Court of Appeals. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

/S/ Judge Allyne R. Ross
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Allyne R. Ross
United States District Judge

Dated: November 1, 2013
Brooklyn, New York

SERVICE LIST

Dong Cai
269657
LOC E5N
Hudson County Correction Center
35 Hackensack Avenue
Kearny, NJ 07032